J-S37001-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: E.K., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: C.J., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1776 EDA 2022 |

Appeal from the Decree Dated June 3, 2022
In the Court of Common Pleas of Monroe County Orphans' Court at
No(s):  9 OCA 2022

BEFORE:  BOWES, J., LAZARUS, J., and OLSON, J.

MEMORANDUM BY BOWES, J.:                **FILED DECEMBER 6, 2022**

C.J. ("Mother") appeals from the June 3, 2022 decree granting the petition filed by the Monroe County Children and Youth Services ("CYS") to involuntarily terminate her parental rights to her daughter, E.K., born in December 2014.[1]  We affirm.

This family first became known to CYS in December 2014, due to a report of Mother's positive drug test at E.K.'s birth, and the agency received numerous reports over the next five years relating to Mother's and Father's substance abuse and domestic violence.  N.T., 6/2/22, at 9, 10. Subsequently, on January 15, 2020, CYS accepted a referral relating to substance abuse and lack of supervision, and the case was re-opened for services.  *Id*. at 10-11, Exhibit 16.  Throughout 2020, CYS collected additional

_____

[1] On the same date, the trial court confirmed the voluntary relinquishment of parentals right of E.K.'s father, J.R. ("Father").

referrals concerning Mother's substance abuse, homelessness, lack of utilities, incarceration, and E.K.'s lack of medical care and enrollment in school. *Id*. at 13, 15, 25-28. Significantly, at times during this period, Mother failed to maintain contact with the CYS or disclose the whereabouts of E.K. *Id*. at 11-12, 16-17, 19-29.

In October of 2020, following Mother's arrest on a bench warrant for driving under the influence, the agency obtained emergency protective custody of E.K. and placed her in kinship care with her paternal grandmother ("Paternal Grandmother"), an adoptive resource. *Id*. at 29. On October 26, 2020, the juvenile court adjudicated E.K. dependent and continued E.K.'s placement with Paternal Grandmother, where she has remained. *Id*. at 29-30.

The juvenile court established an initial permanency goal of return to parent or guardian. In support of reunification, the court ordered visitation and directed Mother to obtain a drug and alcohol evaluation and follow through with recommendations, provide urine drug screens, obtain a mental health evaluation, and maintain stable housing, employment, and sources of income. Order of Adjudication and Disposition, 10/26/20, at 2.

Throughout the ensuing dependency proceedings, the court regularly characterized Mother's compliance with the permanency plan as minimal and noted that Mother made either minimal or no progress toward alleviating the circumstances which necessitated E.K.'s placement. On October 8, 2021, the court changed E.K.'s permanency goal to placement with a legal custodian,

*i.e.*, Paternal Grandmother. Then, approximately three months later, on January 4, 2022, the court changed E.K.'s permanency goal so that Paternal Grandmother could pursue adoption.[2] Mother was not present at either of these goal change hearings and she did not appeal either order.

On March 1, 2022, CYS filed a petition for the termination of parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). The orphans' court held a hearing on the petition on June 2, 2022.[3] Mother was not present but was represented by counsel. CYS presented the testimony of the three caseworkers that worked with the family: Megan McDonnell, Adrianna Stares, and Taieka Reid.[4] Additionally, it introduced Petitioner's Exhibits 1-22, all of which were admitted without objection. N.T., 6/2/22, at 55-57. No evidence was presented by Mother.

On June 3, 2022, the orphans' court involuntarily terminated Mother's parental rights to E.K. pursuant to 23 Pa.C.S. § 2511(a)(1) and (b), and issued an accompanying opinion. Thereafter, Mother timely filed a notice of

---

[2] Mother was incarcerated for three-days in June 2021, and on August 5, 2021, she was arrested on a probation violation and incarcerated for four months. N.T., 6/2/22, at 45, 47, 49. Upon Mother's December 2, 2021 release, CYS reinstated services to Mother.

[3] E.K., then seven and a half years old, was represented by counsel who was appointed pursuant to 23 Pa.C.S. § 2313(a). E.K. articulated a desire to be adopted by Paternal Grandmother, and counsel filed a brief in support of termination.

[4] The notes of testimony misnamed Ms. Reid as Caieka Reid.

appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[5]

Mother presents the following issue for our review: "Whether the court erred in finding that [CYS] proved the elements of 23 Pa.C.S. § 2511 (a)(1) and (b) through clear and convincing evidence?"  Mother's brief at 4 (cleaned up).

We review orders granting the involuntary termination of parental rights for an abuse of discretion, which our Supreme Court has explained "is limited to a determination of whether the decree of the termination court is supported by competent evidence."  *In re Adoption of C.M.*, 255 A.3d 343, 358 (Pa. 2021).  When applying this standard, appellate courts must accept the trial court's findings of fact and credibility determinations if they are supported by the record.  *Interest of S.K.L.R.*, 256 A.3d 1108, 1123 (Pa. 2021).  "Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion."  *In re Adoption of L.A.K.*, 265 A.3d 580, 591 (Pa. 2021).  An appellate court may reverse for an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will."  *Id*.

---

[5] As July 3, 2022, was a Sunday, and July 4th was a court holiday, the notice of appeal was timely filed on July 5, 2022.  *See* 1 Pa.C.S. § 1908 ("Whenever the last day of any [appeal] period shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation.").

- 4 -

Termination of parental rights is governed by § 2511 of the Adoption Act. If the trial court determines the petitioner established grounds for termination under subsection 2511(a) by clear and convincing evidence, then the court must assess the petition under subsection 2511(b), which focuses on the child's needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Instantly, the orphans' court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1) and (b), which provide as follows:

> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> > . . . .
>
> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

We have explained this Court's review of a challenge to the sufficiency of the evidence to support the involuntary termination of a parent's rights pursuant to § 2511(a)(1) as follows:

> To satisfy the requirements of [§] 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,
>
> > [§] 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. **Accordingly, parental rights may be terminated pursuant to [§] 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.**
> >
> > Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to [§] 2511(b).

***In re Z.S.W.***, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted) (emphasis added).

As it relates to the six-month period prior to the filing of the petition, this Court has instructed, "[I]t is the six months immediately preceding the filing of the petition that is most critical to our analysis. However, the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provisions, but instead consider the individual circumstances of each case." ***In re D.J.S.***, 737 A.2d 283, 286 (Pa.Super.

1999) (citations omitted). This requires the Court to "examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination." *In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004) (citation omitted).

> Regarding the definition of "parental duties," this Court has stated:
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship[] and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. **Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.**

*Id*. (internal citations omitted) (emphasis added). Critically, incarceration does not relieve a parent of the obligation to perform parental duties. An incarcerated parent must "utilize available resources to continue a relationship" with his or her child. *In re Adoption of S.P.*, 47 A.3d 817, 828 (Pa. 2012) (discussing *In re Adoption of McCray*, 331 A.2d 652 (Pa. 1975)).

In concluding that CYS satisfied the statutory grounds to terminate Mother's parental rights pursuant to § 2511(a)(1), the orphans' court determined that Mother failed to perform her parental duties during the relevant six-month period. In reaching this conclusion, the court first

highlighted Mother's failure to attend consistent visitations or maintain contact with E.K. Orphans' Court Opinion, 6/3/22, at 7. It further recognized that "Mother has lacked housing, failed to provide urine screens, and failed to remain drug free. [Her] whereabouts are unknown and she failed to appear for the goal change hearing on January 4, 2022 and the [termination] hearing held June 2, 2022." *Id*. As such, the court concluded, "Mother has evidenced a desire to forfeit her parental rights by her failure to perform any parental duties. Grounds for termination exist under 2511(a)(1) as a result." *Id*.

Mother's argument emphasizes the difficulties she faced in complying with her court-ordered goals. She contends:

> It is clear from the testimony that [M]other struggled to maintain housing and a consistent way to contact the agency. As noted above, case law tells us that the court must consider the situation in which a parent finds themselves when determining whether a parent's conduct is reasonable. Mother in this case did have contact with the agency when she could and reached out using other means when her phone wasn't working. Mother also attended most visitations available to her and even visited to the best of her ability while incarcerated.
>
> Given that [M]other was homeless and had a sporadically working phone, [M]other's contact and efforts to parent were reasonable based on her specific circumstances.

Mother's brief at 9-10 (footnotes omitted).

Contrary to Mother's assertions, the certified record supports the termination of parental rights pursuant to § 2511(a)(1). As set forth in the permanency plan, Mother's reunification objectives included: (1) attending visitation; (2) maintaining stable housing and employment; (3) resolving her pending criminal charges; (4) participating in a drug and alcohol evaluation;

and (5) submitting drug and alcohol screens. N.T., 6/2/22, Exhibit 13 at 11-16. CYS caseworkers Adrianna Stares and Taieka Reid both reported that the agency communicated these reunification goals to Mother. N.T., 6/2/22, at 31, 43-44, 49, 50-51, 53. Despite referrals for services, Mother failed to participate in any services beyond periodic supervised visitations.[6] *Id*. at 58. Moreover, Mother had not visited with E.K. since February 2022. *See id*., Exhibits 12 and 18.

Additionally, Mother failed to maintain contact with E.K., and her communication with the agency was sporadic. N.T., 6/2/22, at 45-47, 49-53. Adrianna Stares, the caseworker assigned to the family during 2020, testified, "[Mother] never contacted me independently. She did respond a few times trying to schedule, but then whenever I went to go attempt to go meet her, it was a no call/no show." *Id*. at 37-38. Likewise, the current CYS caseworker, Taieka Reid, testified to a delayed response or no response from Mother to many telephone calls or text messages from May 2021, through March 2022, and beyond. *Id*. at 45-47, 49-53. Ms. Reid noted Mother indicated that her phone was not holding a charge, was not working, and was lost. She further recounted receiving a message that Mother's phone was "not in service." *Id*. at 45-47, 52. Ms. Reid also related that Mother did not provide an address at

---

[6] While Mother had one virtual visit in August 2021, and three in November 2021, visitations did not occur in September and October 2021, as the correctional facility where Mother was incarcerated at the time placed visitations on hold due to COVID-19. N.T., 6/2/22, at 47-48.

a permanency hearing in April 2021. *Id*. at 43. Thereafter, in a February 22, 2022 email, Mother again failed to provide a residential address, but rather provided a post office box. *Id*. at 52.

At the time of the termination hearing, the agency still had no information as to where Mother was living, her employment status, and any compliance with drug and alcohol services.[7] *Id*. at 53-54. Further, Mother had not undergone a urine screen since September 2020, when her urine screen was positive for marijuana and suboxone. *Id*. at 27, 36-37, 54, Exhibit 11. In the two years since that positive screen, Mother has refused to comply with the drug screens. *Id*. at 53-54.

Lastly, Ms. Reid stated that she advised Mother of the proposed goal change to adoption in December 2021. Despite Mother noting her disagreement with the proposed goal change, she failed to appear at the ensuing goal change hearing to contest the decision. *Id*. at 50.

As clear and convincing evidence supports the court's determination that Mother failed to perform her parental duties in excess of the six months prior to the filing of the March 2022 termination petition, the orphans' court did not err or abuse its discretion in finding the statutory grounds to terminate Mother's parental rights pursuant to § 2511(a)(1). *See In re Z.S.W.*, *supra* at 730. Furthermore, the orphans' court accurately observed that Mother

---

[7] Mother engaged in an inpatient drug and alcohol treatment program in July 2021, but was discharged within the month. *Id*. at 47.

neglected to present any evidence to explain the lack of contact with E.K. during the relevant period. *Id*. While Mother claims that her limited contact and meager efforts were reasonable based on her specific circumstances and suggests that her efforts will improve upon securing a stable home and working telephone, we reiterate that "parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with the child's physical and emotional needs." *In re B., N.M.*, *supra* at 855 (citation omitted). As we discern no error of law or abuse of discretion, we do not disturb the orphans' court's finding of grounds for termination pursuant to § 2511(a)(1).

Next, we review the orphans' court's needs and welfare analysis pursuant to § 2511(b). Our Supreme Court outlined this inquiry as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, *supra* at 267.

When evaluating a parental bond, "[T]he court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as

- 11 -

well.  Additionally, § 2511(b) does not require a formal bonding evaluation."

*In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2010) (internal citations

omitted).  Moreover, "the mere existence of a bond or attachment of a child

to a parent will not necessarily result in the denial of a termination petition."

*T.S.M.*, *supra* at 267.  The Court directed that, in weighing the bond

considerations pursuant to § 2511(b), "courts must keep the ticking clock of

childhood ever in mind."  *Id.* at 269.  The *T.S.M.* Court observed, "[c]hildren

are young for a scant number of years, and we have an obligation to see to

their healthy development quickly.  When courts fail . . . the result, all too

often, is catastrophically maladjusted children."  *Id.*

> Furthermore,
>
> While a parent's emotional bond with his or her child is a major
> aspect of the § 2511(b) best-interest analysis, it is nonetheless
> only one of many factors to be considered by the court when
> determining what is in the best interest of the child.
>
> > In addition to a bond examination, the trial court can
> > equally emphasize the safety needs of the child, and
> > should also consider the intangibles, such as the love,
> > comfort, security, and stability the child might have
> > with the foster parent. . . .

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa.Super. 2015) (quoting

*In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011)) (cleaned up).

Instantly, in determining that the termination of Mother's parental rights

would serve E.K.'s needs and welfare pursuant to § 2511(b), the orphans'

court noted the lack of a meaningful parent-child bond, E.K.'s desire to forego

visits with Mother, and her support of the anticipated adoption by the Paternal

Grandmother. Orphans' Court Opinion, 6/3/22, at 8. The orphans' court further emphasized E.K.'s bond with Paternal Grandmother, concluding, "The minor child is bonded with [P]aternal [G]randmother[, who] . . . . has been caring full-time for the minor child since October 2020 and wants to adopt her." *Id*.

Mother argues that E.K. had been in her care for six years prior to CYS's most recent intervention. She contends that she attempted to maintain contact and visitation during the dependency proceedings. Mother's brief at 12. While acknowledging E.K.'s views on visitation, Mother contends that familial bond exists given the amount of time she cared for E.K. prior to 2020. *Id*. She asserts that the agency failed to present any evidence regarding the status of the claimed bond and the effect that severing that bond could have on her daughter. *Id*.

Again, the certified record supports the court's decision to terminate Mother's parental rights. First, to the extent that Mother discounts the testimony of the agency caseworkers or raises the lack of a bonding evaluation, such an argument is without merit. Indeed, as we have previously reiterated, CYS is not required to present an expert bonding evaluation, and that the court may consider the bonding assessments of social workers and caseworkers. *In re Z.P.*, *supra* at 1121.

More importantly, the certified record bears out that no meaningful parent-child bond exists between Mother and E.K. Mother last contact with E.K. was on February 7, 2022, during an isolated in-person supervised

- 13 -

visitation that occurred four months prior to the evidentiary hearing. ***See*** N.T., 6/2/22, Exhibit 12. The certified record confirms that E.K. terminated that session early because she was tired and bored. ***Id***. There is no evidence of any subsequent contact between Mother and E.K.

Significantly, E.K. initially expressed her dissatisfaction with visitations almost one year earlier, in March 2021, as well as in May 2021. N.T., 6/2/22, at 41, 45. She then notified CYS in February 2022, that she no longer wanted to visit with Mother. ***Id***. at 51-52. E.K. temporarily changed her mind at the end of February 2022. However, by the end of March 2022, E.K. again expressed her desire to forego the visitations. ***Id***. at 52-53. In addition, Ms. Stares confirmed a recurring problem during visitations caused by Mother's complaints about the dependency case and her "rants about how the agency done her wrong" generally. ***Id***. at 39, Exhibit 12.

Furthermore, E.K. has resided with Paternal Grandmother since October 2020, which was approximately one and one-half years before the hearing, and E.K. is thriving in Paternal Grandmother's care. N.T., 6/2/22, at 29-30, 54. Her primary bond is with Paternal Grandmother, who is an adoptive resource. ***Id***. at 58.

Paternal Grandmother is helping E.K. navigate behavioral issues associated with Attention-Deficit/Hyperactivity Disorder and Oppositional Defiant Disorder, for which E.K. takes medication and receives therapeutic emotional support and an in-school support paraprofessional. ***Id***. at 35, 40-41, 54, Exhibit 14. Under Paternal Grandmother's care, E.K. is progressing

and she is current with all her medications and medical appointments. N.T., 6/2/22, at 40, 54-55. In contrast, when the child was with Mother, she was typically behind in both her education and medication. *Id*. at 12-13, 23-24.

As demonstrated by the foregoing evidence, the certified record supports the orphans' court's finding that terminating Mother's parental rights serve E.K.'s developmental, physical, and emotional needs and welfare. Thus, we discern no abuse of discretion in the termination of Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1) and (b).

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/6/2022